IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


REGINALD L. COBBINS,               )
                                       )
         Plaintiff,            )
                                       )
        v.                )     Case No. 2:09-cv-04025-NKL
                                     )
ENGINEERED PLASTIC        )
COMPONENTS, ET AL.,       )
                                     )
        Defendants.       )
                                     )


ORDER

Reginald L. Cobbins ("Plaintiff"), acting pro se, has sued his employer, Defendant

EPC-Columbia, Inc. ("Defendant"), for violations of 42 U.S.C. § 2000e, Title VII of the

Civil Rights Act of 1964, namely racial and religious discrimination, retaliation, and

hostile work environment. Pending before the Court is Defendant's Motion for Judgment

on the Pleadings, or Alternatively Motion for Summary Judgment.  [Doc. # 52].  For the

following reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED as

to Plaintiff's discrimination and retaliation claims, and Defendant's Motion for Summary

Judgment is GRANTED as to Plaintiff's hostile work environment claim.

I.     **Factual and Procedural Background**

Although Plaintiff is proceeding pro se, he is still required to comply with the

federal rules of civil procedure, as well as this Court's local rules.  *See Gieselman v. City*

*of Desoto*, No. 07-1510, 2008 WL 163593, at *1 (E.D. Mo. Jan. 17, 2008) ("Plaintiff's

pro se status cannot provide a shield for his gross failure to comply with the Federal Rules

of Civil Procedure and this Court's previous order."); *United States v. Pospisil*, 127

F.Supp.2d 1059, 1062 (W.D. Mo.2000) ("[P]ro se status is no excuse for failure to

comply with the federal rules or court orders.") (citing *Ackra Direct Mktg. Corp. v.

Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th Cir.1996)). Because Plaintiff failed to respond

to Defendants' statement of facts, the Court will deem those facts admitted under Local

Rule 56.1.

On December 29, 2008, Plaintiff, a black male, filed an EEOC charge of

discrimination based on race and religion against his employer, which he refers to as

"Engineered Plastic Components." [Doc. # 53-3]. In it, Plaintiff alleged the following

for the period from October 1, 2007 to December 26, 2007:

> I.    I was employed on August 13, 2007, as Production Worker. During
>       the period October 2007 through December 2007, I experienced
>       daily harassment. I reported racially and religious offensive
>       comments to management.
> II.   The employee threatened to do bodily harm to me. Thereafter, I was
>       reassigned to another job. No action was taken against the employee
>       who made the discriminatory comments or threats.
> III.  I believe I was subjected to discriminatory reassignment, religious
>       and racial harassment in violation of Title VII of the Civil Rights Act
>       of 1964, as amended.

[Doc. # 53-3]. Plaintiff received a right-to-sue letter dated December 30, 2008. [Doc. #

6-1, at 1]. Plaintiff then filed a timely complaint against his employer, Defendant EPC-

Columbia, Inc., with the Court [Doc. # 6], alleging that on or about October 1, 2007,

Defendant committed "harassment." [Doc. # 6, at 3]. Plaintiff conveyed this in his

Complaint by circling the word "harassment" in the section of his Complaint where he indicated his allegations. Plaintiff elaborated on his claim by adding "standing up for justice[,] retaliation, being union member" and that he was discriminated against because of his "race, religion." [Doc. # 6, at 3]. Plaintiff's request for relief appears to include an apology, compensation, reinstatement of his position, and assurance of "a non hostile, non discriminatory work environment." [Doc. # 6, at 3].

The harassment Plaintiff complains of originates with his fellow production worker, Chuck Aust ("Aust"), who, starting around October 2007, played music in his work section that used the word "nigger." [Doc. # 53, ¶ 8]. The music could be heard "just about every day." [Doc. # 53-4, at 35:19-20]. Plaintiff complained to Dave Arnold ("Arnold"), a senior engineer over the production area, who held that position since August 13, 2007. [Doc. # 53, ¶ 10]. Plaintiff told Arnold that the music offended him and that it used the word "nigger" repeatedly. [Doc. # 53, ¶ 9]. Later in October 2007, Arnold held a mandatory meeting for all EPC production workers, including Aust, and told the employees that they could not play offensive music and that playing such music would not be tolerated. [Doc. # 53, ¶ 12].

On or about December 5, 2007, Plaintiff next complained to another co-worker that Aust was playing music with the word "nigger" in it, that Aust was singing along with the music, and that Aust had told Plaintiff that Aust's wife told Aust that he was "blinging like a nigger" when he wore a big necklace and watch. [Doc. # 53, ¶ 13]. On December 20, 2007, Plaintiff complained to Arnold that Aust was playing music that

offended him and about Aust's "blinging like a nigger" remark. [Doc. # 53, ¶ 14].

Plaintiff requested that Arnold speak to Aust directly about his music and comments. On

or about that same day, Arnold talked to Aust and informed him that he had "received a

complaint about his music, and that, if in fact he was playing inappropriate music and it

occurred again, such action would lead to discipline up to discharge." [Doc. # 53-5, ¶ 7].

On December 21, 2007, Plaintiff complained that he and Aust had a verbal

altercation. That same day, Arnold, Defendant's human resource manager, and Plaintiff's

union representative all met with Plaintiff to investigate his complaint. Plaintiff stated

that Aust: (1) had been playing inappropriate music from the production floor, (2) did not

want him to ask about his religion, (3) that Mr. Aust was listening to racially charged

music, and (4) commented about "kicking his old ass." [Doc. # 53, ¶ 19; Doc. # 53-5, ¶¶

8-9]. Also that same day, Defendant's plant manager, Randy Nelsen, met with Aust. Aust

reported that Plaintiff had kept asking him why he was not religious, complained that he

did not like his music, and said that Plaintiff had threatened to start a physical altercation

with him. [Doc. # 53, ¶ 20]. Defendant reminded both employees of how they were

expected to treat one another in the work place. Since Plaintiff and Aust both pointed

blame and wrongdoing to the other, Defendant decided to move Plaintiff to a different

work area to separate Plaintiff and Aust. This reassignment occurred on January 2, 2008,

as Defendant's plant was shut down for break between December 22, 2007 and January 1,

2008. [Doc. # 53, ¶ 21]. At the next morning meeting after Plaintiff's December 21,

2007 complaint, Arnold told all production employees, including Chuck Aust, that they

"needed to make sure that any music they played was appropriate for the workplace, to be respectful of their coworkers in making their music choices and that any further complaints about music choices would be handled with disciplinary action and the loss of the privilege to play music in the work place." [Doc. # 53-5, ¶ 6].

After December 21, 2007, Plaintiff made no further complaints related to Aust while he was employed with Defendant. [Doc. # 53, ¶ 27]. After Plaintiff's reassignment, Plaintiff continued to work as a pour mold operator and received the same pay and benefits as he had prior to the reassignment. [Doc. # 53, ¶ 24]. Aust did not make any offensive comments or play any music that offended Plaintiff after Plaintiff's reassignment. [Doc. # 53, ¶¶ 24, 26].

On September 8, 2010, Defendant filed a Motion for Judgment on the Pleadings, or Alternatively Motion for Summary Judgment. [Doc. # 52]. Plaintiff was granted an extension of time to respond to Defendant's motion. When Plaintiff's response was due on October 19, 2010, Plaintiff instead filed a motion to appoint counsel. [Doc. # 59]. The Court denied that motion without prejudice. [Doc. # 62]. Plaintiff's only "response" thus far to Defendant's Motion is his Motion for Hearing [Doc. # 64] to depose Defendant's affiants, which the Court denied as untimely. [Doc. # 66].

## II. Legal Standard

### A. Judgment on the Pleadings

The standard for judgment on the pleadings is a strict one. The movant must clearly establish that there are no material issues of fact and judgment is appropriate as a

5

matter of law. *See Syverson v. FirePond*, *Inc.*, 383 F.3d 745, 749 (8th Cir. 2004) (citation omitted); *Faibisch v. Univ. of Minn.*, 304 F.3d 797 (8th Cir. 2002); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). The Court accepts as true the facts pled by the nonmoving party and draws all reasonable inferences from the pleadings in that party's favor. *See Syverson*, 383 F.3d at 749 (citation omitted). Additionally, the Court "may rely on matters within the public record," such as Plaintiff's EEOC charge. *Faibisch*, 304 F.3d at 802 ("[D]istrict courts regularly look upon EEOC charges as matters within the public record."). The standard of review for a Rule 12(c) motion is essentially the same as for Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 546.

### B.     Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the

non-moving party to respond by submitting evidentiary materials that designate "specific

facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary

judgment is appropriate, a district court must look at the record and any inferences to be

drawn from it in the light most favorable to the non-moving party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is not proper if the evidence

is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 248.

## II.    Discussion

### A.    Discrimination

Initially, Plaintiff must establish a prima facie case of discrimination under Title

VII.  *See Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999) (citing *Texas*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).  To do so, a plaintiff

must show: (1) he is a member of a protected class; (2) he met his employer's legitimate

expectations; (3) he suffered an adverse employment action; and (4) the circumstances

give rise to an inference of discrimination.  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871,

874 (8th Cir. 2010) (citation omitted).

Plaintiff has not done so here. While he has pled that he is a member of a protected

class, he has failed to allege sufficient facts to show that he was subjected to an adverse

employment action.  Being transferred to a different job with no change in pay or

conditions is not an adverse employment action.  Further, he has not alleged that similarly

7

situated employees outside the protected class were treated differently. While Plaintiff states in his EEOC charge that "[n]o action was taken against the employee who made the discriminatory comments or threats[]" [Doc. # 53-3], he did not allege that he and the other employee were similarly situated or that the other employee was not a member of his protected class. *McNeil v. Labor Ready & Command Ctr.*, No. 8:09cv60, 2009 WL 928897, at *2 (D. Neb. Apr. 2, 2009). Judgment on the pleadings is granted for the Defendant on Plaintiff's discrimination claim.

## B.      Retaliation

Just as with a discrimination claim, Plaintiff must establish a prima facie case of retaliation under Title VII by showing that: "(1) [he] engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Recio v. Creighton Univ.*, 521 F.3d 934, 938-39 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)). Plaintiff has not done so here. First, Plaintiff does not specifically allege retaliation in his EEOC charge, and he pleads no facts in his Complaint that support a retaliation claim. Second, while he does state that he was reassigned to another job after he had complained of the offensive remarks to management, he alleges no facts as to the nature of the reassignment, or why "reasonable employees would have found the [reassignment] materially adverse." Therefore, as to this claim, the Court grants judgment for Defendant on the pleadings.

## C.      Hostile Work Environment

To establish a hostile work environment claim under Title VII, a plaintiff must establish that: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was because of his membership in the protected group; (4) the harassment affected a term, condition or privilege of his employment; and (5) the employer knew or should have known of the discriminatory harassment and failed to take prompt and effective remedial measures to end the harassment. *Colenburg v. Starcon Int'l, Inc.*, 619 F.3d 986, 994 (8th Cir. 2010) (citation omitted); *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 945(8th Cir. 2010) (citation omitted). Plaintiff has met this requirement. Plaintiff has pled that he is a member of a protected class (e.g., he states in his Complaint that he is black); that he was subjected to unwelcome harassment (e.g., he states in his EEOC charge that "racially and religious offensive comments" were made to him daily and an employee threatened to do bodily harm to him); the harassment affected a term, condition or privilege of his employment (e.g., he states in his EEOC charge that he was threatened with physical harm); the employer knew of the harassment (e.g., he states in his EEOC charge that he reported the offensive comments to management); and the employer failed to take prompt and effective remedial measures to end the harassment (e.g., he states in his EEOC charge that no action was taken against the employee who made the discriminatory comments or threats). Therefore, as to this claim, the Court denies judgment for the Defendant on the pleadings.

However, the Court now considers Defendant's Alternative Motion for Summary Judgment. The fifth element of a hostile work environment claim concerns whether an

employer took "prompt and effective remedial measures to end the harassment" after it knew or should have known of the harassment. Defendant became aware of Plaintiff's complaints of Aust's offensive music and remarks when Plaintiff notified Dave Arnold, one of Defendant's managers. Two of Plaintiff's complaints to Defendant occurred in October 2007 and on December 20, 2007. Shortly after both complaints, Arnold held mandatory meetings for all production workers, including Chuck Aust, where he informed employees that they could not play offensive music and that playing such music would not be tolerated. At the December meeting, Arnold also stated that any further complaints about music choices would be handled with disciplinary action and loss of the privilege to play music in the work place. Additionally, after Plaintiff's specific request that Arnold talk to Aust directly, Arnold did so. Arnold told Aust that he would be disciplined should he play inappropriate music again. Plaintiff's third and final complaint occurred on December 21, 2010, when he and Aust engaged in a verbal altercation. That same day, the human resources manager, plant manager, union representative, and Arnold took part in investigating the incident. After the investigation, Aust ceased playing music that offended Plaintiff and making offensive remarks to Plaintiff.

The response by Defendant after each of Plaintiff's complaints was swift. That Aust's behavior changed after December 21, 2007, is also indicative of the efficacy of Defendant's response. It is undisputed that Defendant took prompt and effective remedial measures to end the harassment. The Court grants summary judgment to Defendant as to

Plaintiff's claim for harassment.

**III.    Conclusion**

Accordingly, it is hereby

ORDERED that Defendant's Motion for Judgment on the Pleadings or

Alternatively Motion for Summary Judgment [Doc. # 52] is GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: <u>December 22, 2010</u>
Jefferson City, Missouri